# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| VINCENT DUNBAR, #451-946 | * |
| | * |
| v. | *  Civil No. CCB-19-610 |
| | * |
| C. GILPIN, *et al.* | * |

* * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM

Plaintiff Vincent Dunbar, a Maryland prisoner, brought this § 1983 action against defendants CO II Cody Gilpin, CO II Warren Mallow, CO II Brandon Cox, and CO II Jason Frantz (the "correctional officers"). Dunbar alleges that the correctional officers violated his Eighth Amendment rights and retaliated against him. (ECF 1, 6).[1] Now pending is the correctional officers' motion to dismiss or, in the alternative, for summary judgment. (ECF 21). Dunbar opposes the motion. (ECF 28).[2] For the reasons explained below, the court will dismiss the retaliation claim and deny the motion for summary judgment on the Eighth Amendment claim.

## BACKGROUND

Dunbar alleges that on August 29, 2018,[3] the correctional officers came to Dunbar's cell, "rear-cuffed" him, and dragged him out of his cell. (ECF 1 at 3). According to Dunbar, the correctional officers then dragged Dunbar down to the first floor and into the Housing Unit 1 Medical Treatment Room, punched and kicked him repeatedly throughout his body, gouged his

---

[1] After filing his Complaint, Dunbar filed a "Declaration" in which he asserted his retaliation claim. (ECF 6). The correctional officers do not object to the court's construing of this document as a supplement to the Complaint. (Mot. at 2 n.1, ECF 21-1).
[2] The correctional officers did not file a reply.
[3] Dunbar notes several times that the alleged assault occurred on August 29, 2019, but the record establishes that the events in question took place on August 29, 2018.

1

left eye, and attempted to break his right toe and wrist. (*Id.*). Dunbar alleges that there was no justification for this use of force. (*Id.*).[4] According to medical records from August 29, 2018, Dunbar sustained a bloody nose, a small abrasion on his right lower chin, and a small contusion on his right cheek and jaw. (ECF 1-1 at 4). Dunbar further alleges that on April 2, 2019, Mallow and Gilpin approached him, Mallow asked, "why you fuckin' take a lawsuit out on me," and Gilpin stated, "you better watch your back." (ECF 6 at 2).

The correctional officers offer a somewhat different version of this altercation. Gilpin states that on August 29, 2018, the correctional officers were conducting a "bar check" of Dunbar's unit, which involves removing an inmate from his cell so that the bars can be checked to ensure security. (Gilpin Decl. ¶¶ 2–3, ECF 21-3). Gilpin states that he handcuffed Dunbar, removed him from the cell, maintained control of him while bar check was conducted, and then returned him to the cell. (*Id.* ¶¶ 4–6). According to Gilpin, after Dunbar was secured in his cell, Dunbar refused to place his hands out of the security slot to have the handcuffs removed. (*Id.* ¶ 7). Gilpin then opened the cell door to control the handcuffs, and while he was controlling the handcuffs, Dunbar twisted the handcuff chain on Gilpin's right hand. (*Id.*). Gilpin states that he was unable to free his hand, so he forced Dunbar to the floor "in an attempt to free [his] hand and stop inmate Dunbar's actions." (*Id.*). Gilpin states that Mallow assisted him by "controlling Dunbar's right leg." (*Id.* ¶ 8). Dunbar was then "taken to the Medical room on the Unit for evaluation by medical personnel." (*Id.* ¶ 9). Gilpin denies using force "not required to restore order," (*id.* ¶ 13), and denies threatening retaliation, (*id.* ¶ 14).

Mallow, Cox, and Frantz recite a similar version but include additional facts. Mallow confirms that he "controlled Dunbar's right leg," but adds that Dunbar kicked him and that

---

[4] In his Response, however, Dunbar admits that he "refuse[d] to allow [the] officer to remove [his] handcuffs." (ECF 28 at 2).

2

"Officers Cox and Frantz responded and assisted in controlling inmate Dunbar." (Mallow Decl. ¶ 6, ECF 21-5; Frantz Decl. ¶¶ 3–4; ECF 21-6; Cox Decl. ¶¶ 3–4, ECF 21-7). Mallow, Frantz, and Cox state that they carried Dunbar to the medical room, and that while awaiting medical staff, Dunbar "continued to be combative." (Mallow Decl. ¶ 7; Frantz Decl. ¶ 5; Cox Decl. ¶¶ 5–6). In response, Mallow "used confrontation avoidance to deescalate Inmate Dunbar's behavior," (Mallow Decl. ¶ 8), and Frantz applied leg irons to Dunbar's ankles, (*id.*; Frantz Decl. ¶ 7; Cox Decl. ¶ 7). Mallow, Frantz, and Cox deny using excessive force or threatening retaliation. (Mallow Decl. ¶¶ 11, 17; Frantz Decl. ¶¶ 10, 14; Cox. Decl. ¶¶ 11, 15).

A portion of this altercation were captured on video.[5] The video shows that around 11:30 am, a large group of correctional officers was pulling inmates one by one out of their cells, presumably to conduct the bar check. At 11:33:10 am, Dunbar is removed from his cell. His hands appear handcuffed behind his back. Less than a minute later, Dunbar goes back into his cell. Shortly thereafter, several other correctional officers begin moving toward Dunbar's cell. At 11:34:08 am, Dunbar is pulled out of his cell. A few seconds later, he is forced to the ground by a correctional officer (identified as Gilpin) and then picked up—by the arms and one leg—by Gilpin and another correctional officer (identified as Mallow). While Dunbar is being carried, his free leg makes contact with the back of Mallow's legs, causing Mallow to stumble. By 11:34:22 am, Dunbar is being carried by four correctional officers. He appears to be struggling. All five individuals exit the frame at 11:34:45 am. This is the extent of the video evidence of the altercation.

## STANDARDS OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil

---

[5] The video is on file in hard copy with chambers.

Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## ANALYSIS

### I. Retaliation Claim

The officers argue that Dunbar's retaliation claim must be dismissed for failure to exhaust administrative remedies. (Mot. at 14). The Prisoner Litigation Reform Act ("PLRA") provides in relevant part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner; rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Exhaustion is mandatory, and a court usually may not excuse an inmate's failure to exhaust. *See Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). An inmate, however, is not required to exhaust an administrative remedy that is not "available" to him. *See id.* at 1859; *Moore*, 517 F.3d at 725. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. Accordingly, a federal court may hear an inmate's claim where he "utilized all available remedies in accordance with the applicable procedural rules, so that prison officials [had] been given an opportunity to address the claims administratively." *Id.*

Maryland's Department of Public Safety and Correctional Services ("DPSCS") has a grievance system for inmate complaint resolution, set forth at Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.02.28.02(1). The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or

employee[s] of the Division of Correction ("DOC")[.]" C.S. § 10-206(a). Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(8). "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies provided in [C.S. Title 10, Subtitle 2]." C.S. § 10-210(a).

There is an established administrative remedy procedure ("ARP") process that applies to all Maryland prisons. COMAR 12.02.28.01 *et seq*. When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the Inmate Grievance Office ("IGO"). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a)(i)–(iv).

Here, the record indicates that Dunbar did not exhaust his administrative remedies with respect to his retaliation claim. The allegations of the Supplemental Complaint (ECF 6)—threats by correctional officers—clearly fall within the IGO's jurisdiction. *See* COMAR 12.07.01.01(B)(8). Yet the evidence establishes that Dunbar did not utilize the grievance procedures. According to IGO Administrative Officer Samiyah Hassan, "Inmate Dunbar has not filed any complaints or grievances with the IGO alleging any retaliation by any corrections officers for filing a lawsuit." (Hassan Decl. ¶ 4, Mot. Ex. 9, ECF 21-11). Moreover, Dunbar has previously availed himself of the administrative grievance process on other matters, (*id.* ¶ 3), suggesting that these procedures were "available" to him. Accordingly, the court will dismiss

Dunbar's retaliation claim.

## II. Conversion of the Motion to Dismiss to one for Summary Judgment

Conversion of a motion to dismiss into one for summary judgment may be appropriate if all parties have "be[en] given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Rule 12(d) conversion is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). In *Laughlin*, the Fourth Circuit held that the plaintiff had "actual notice" where the defendant's motion was captioned as a "Motion to Dismiss, or, in the alternative, Motion for Summary Judgment," and the plaintiff "submitted a 'Memorandum in Opposition to Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment' to which she attached supporting affidavits." *Id.*

Here, Dunbar clearly had actual notice that the correctional officers' motion could be treated as a motion for summary judgment. Not only did Dunbar caption his response as "Plaintiff Answer to Defendants Motion for Summary Judgement [*sic*]," but he also correctly recites the standard of review under Rule 56(a). (Opp'n at 1–2). Moreover, Dunbar notes that he "provided [the court] with surveillance video, photographs and medical documentation and evidence to prove [his] case," (*id.* at 2), suggesting that he does not object to the court's consideration of material outside the Complaint. Accordingly, the court will review Dunbar's remaining claim under the Rule 56(a) standard.

## III. Eighth Amendment Claim

The Eighth Amendment prohibition on cruel and unusual punishments "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment is violated when an inmate is subjected to

"unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citation and quotation marks omitted). To establish an Eighth Amendment violation, an inmate must establish: (1) that "the prison official acted with a sufficiently culpable state of mind (subjective component); and (2) that "the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *See Williams*, 77 F.3d at 761. The subjective component requires a showing that the prison official used force "maliciously or sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. 1, 6 (1992) (citation and quotation marks omitted). The objective component requires a showing that the prison official used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). While "not every malevolent touch by a prison guard gives rise to a federal cause of action," an Eighth Amendment violation can occur even if the use of force did not cause serious injury. *Id.* at 37–38 (citation and quotation marks omitted). The extent to which injuries are modest is accounted for in the award of damages. *Id.* at 40.

The correctional officers argue that they are entitled to summary judgment in their favor because "the record demonstrates that the Plaintiff did not suffer an excessive use of force," "there was no showing of any injuries consistent with having suffered an excessive amount of force," and "[t]he Plaintiff's medical records together with photos taken immediately after the incident establish that the physical contact used by the correctional officers was minimal[.]" (Mot. at 10, ECF-21-1). Essentially, the correctional officers argue that because Dunbar was not more seriously injured, they *ipso facto* did not use excessive force. This is not a correct application of the excessive force inquiry's objective component. As the Supreme Court stated in *Wilkins*, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an

excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38. Accordingly, the correctional officers' focus on the "minimal" nature of Dunbar's injuries—which included a bloody nose, chin abrasion, and a facial contusion—misses the mark. To prevail on summary judgment based on the objective component, the correctional officers needed to show that there was no genuine dispute as to the amount of force used. They have not done so.

With respect to the subjective component, the correctional officers argue that the record establishes that the "force [] used against the Plaintiff was necessary to maintain order." (Mot. at 10). In so arguing, the correctional officers rely on the medical records and photos of Dunbar's injuries, which they claim "establish that the physical contact used . . . [was] applied in a good faith effort to maintain order and discipline." (*Id*). As explained above, however, the extent of Dunbar's injuries is not conclusive as to whether the force was excessive, nor does it establish whether such force was "necessary" or "applied in [] good faith."

The correctional officers also rely on the video, which is equivocal on whether the force was "necessary." While the video does suggest that Dunbar failed to comply with an order, it also shows that Dunbar was at all times handcuffed behind his back and outnumbered by correctional staff. Moreover, in reviewing this incident, a Maryland Division of Correction investigator concluded that "this Use of Force could possibly [have] been avoided" if "better decision making and judgement [*sic*] [had] been utilized," and stated that that "Officer Gilpin will be counseled and disciplined[.]" (ECF 21-4 at 22–24). Based on this record, the court does not believe that a determination of whether this force was "necessary" is appropriate for summary judgment.

The court also disagrees with the correctional officers' general characterization of the

record. Contrary to the correctional officers' assertions, the video evidence does not "conclusively show[] that the Plaintiff's account is inaccurate." (Mot. at 10). The video evidence captures only the first phase of the alleged assault; after the correctional officers pulled Dunbar out of his cell, Dunbar alleges that they took him to the medical room and continued to assault him. This second phase was not captured on video. The correctional officers simply state that Dunbar's time in the medical room was "short," and that "[i]t is unlikely that during this short amount of time there was a significant use of force." (*Id.*). But the record establishes that Dunbar was in the medical room for at least twenty minutes before his injuries were photographed, (*see* Video at 11:34:45 am (Dunbar carried out of frame); ECF 28-1 at 4 (time stamp of photographs listed as 11:55 AM)), and not examined by the nurse until several minutes later, (*see* ECF 28-1 at 2). The court thus does not find that the record entitles the correctional officers to summary judgment on the Eighth Amendment claim.[6]

## IV. Qualified Immunity

The correctional officers argue that they are entitled to qualified immunity on Dunbar's Eighth Amendment Claim. Pursuant to the doctrine of qualified immunity, even if a public official engages in unconstitutional conduct, he "may nevertheless be shielded from liability for civil damages if [his] actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The correctional officers argue that they are entitled to qualified immunity because Dunbar had no "clearly established" right to be free of their reasonable use of force. (Mot. at 17). But as the

---

[6] The correctional officers also appear to argue that Dunbar's version of events is so unbelievable that the court should reject it. (*See* Mot. at 8)). The correctional officers specifically emphasize that Dunbar did not state in his complaint that he refused to have handcuffs removed, but admitted the fact later. (*Id.* at 5, 10). But credibility determinations are generally not appropriate for summary judgment, *see Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015), and Dunbar's version is not "blatantly contradicted by the record," *see Scott*, 550 U.S. at 380. Accordingly, the court declines to grant summary judgment based on the correctional officers' assertion that Dunbar is not credible.

court has explained, the record does not conclusively establish that the force was "reasonable" as a matter of law. In any event, Dunbar is not arguing that he had an Eighth Amendment right to be free of *reasonable* use of force; indeed, he claims that the use of force was *unreasonable*. Dunbar's excessive force claim consists largely of the allegation that after he was taken to the medical room (where there is no surveillance video), the correctional officers punched and kicked him and attempted to break bones in his toe and wrist. If this account is true, it would constitute an Eighth Amendment violation for which the correctional officers could not claim qualified immunity. *See Hope*, 536 U.S. at 741–43 (whether conduct violates "clearly established" right turns on whether a "reasonable person would have known" that the conduct "crossed the line of what is constitutionally permissible"). Accordingly, the court is unable to find at this time that the correctional officers are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the correctional officers' motion to dismiss or, in the alternative, for summary judgment will be granted in part and denied in part. A separate order follows.

\_\_3/11/20\_\_  
Date

\_\_\_*CCB*\_\_\_  
Catherine C. Blake  
United States District Judge